UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

**DECISION & ORDER**
24-CR-192 (WFK)

REINALDO DAVIS,

                 Defendant.
-----------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

Before the Court are the Government's motions *in limine*. ECF Nos. 27, 29. For the reasons set forth below, the Government's motions at ECF No. 27 are **GRANTED in part** and **DENIED in part**, and the Government's motions at ECF No. 29 are **DENIED**.

## BACKGROUND

On August 18, 2022, a grand jury in the District of Vermont returned a one-count indictment charging Reinaldo Davis ("Defendant") with distribution of cocaine base in violation of 21 U.S.C. §§ 841(a), (b)(1)(C). Indictment, 2:22-CR-92, ECF No. 7 (D. Vt.). On December 8, 2022, Defendant pled guilty to the indictment's sole count pursuant to a plea agreement. Minute Entry of Change of Plea Hearing, 2:22-CR-92, ECF No. 19 (D. Vt.). On April 28, 2023, the District Court of the District of Vermont sentenced Defendant to eighteen months' imprisonment followed by three years' supervised release. Judgment, 2:22-CR-92, ECF No. 29 (D. Vt.). On October 4, 2023, Defendant completed his custodial term and commenced supervised release. Violation of Supervised Release ("VOSR") Report at 1, ECF No. 7. Among other things, Defendant's conditions of supervision (1) forbade him from committing new crimes, (2) required him to obtain permission before leaving the district of supervision, (3) forbade illegal drug use, and (4) mandated he undergo drug treatment. Judgment, 2:22-CR-92 (D. Vt.).

1

On May 13, 2024, Defendant's supervision was transferred to the Eastern District of New York, where he resides. Transfer of Jurisdiction Request, ECF No. 1; Transfer of Jurisdiction Acceptance, ECF No. 2.

On November 27, 2024, the United States Probation Department filed a Violation of Supervised Release Report, charging Defendant with (1) committing another crime (rape of a former partner, the "Victim"); (2) leaving the federal judicial district of supervision without permission; (3) unlawfully using controlled substances; and (4) failing to comply with substance abuse treatment. VOSR Report at 6–9.

On April 14, 2025, the Government filed motions *in limine*, seeking to admit evidence related to Defendant's commission of a new crime, specifically (1) a recording of the 911 call reporting the rape; (2) video footage from a police officer's body-worn camera, recording the Victim's statements in the hours after the rape occurred; (3) the Victim's statements to a U.S. Probation Officer a week after the rape; and (4) text messages between the Victim and Defendant shortly after the rape. The Government also seeks to admit records from Defendant's drug treatment provider, as they relate to Defendant's failure to comply with substance abuse treatment. *See generally* Gov't Mot. *in Limine*, ECF No. 27. That same day, the Court set a briefing schedule. ECF No. 28.

Consistent with the briefing schedule, defense counsel filed an opposition on April 18, 2025. Def. Opp. to Gov't Mot. *in Limine*, ECF No. 29. The Government filed a reply on April 22, 2025. Gov't Reply, ECF No. 30.

On April 23, 2025, the Government filed a second set of motions *in limine*, seeking to preclude Defendant from cross-examining witnesses about certain information at the revocation hearing. Gov't Second Mot. *in Limine*, ECF No. 31. Specifically, the Government sought to

preclude Defendant from questioning (1) Officer Edwin Gerena about a July 16, 2023, work-related violation; (2) Probation Officer Matt Geller about two June 2024 work-related violations; and (3) the Victim about a November 28, 2023, arrest. *Id.* at 3–4.

## LEGAL STANDARD

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Gorbea v. Verizon New York, Inc.*, 11-CV-3758, 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (Matsumoto, J.). District courts should exclude evidence on a motion *in limine* "only when the evidence is clearly inadmissible on all potential grounds." *Id.* (quoting *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (Leisure, J.)) (internal quotation marks omitted).

"Because a revocation hearing is 'not deemed part of a criminal prosecution, . . . defendants in such proceedings are not entitled to 'the full panoply of rights' that criminal defendants generally enjoy.'" *United States v. Carthen*, 681 F.3d 94, 99 (2d Cir. 2012) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Indeed, neither the Federal Rules of Evidence nor the Sixth Amendment's Confrontation Clause apply to such hearings. Fed. R. Evid. 1101(d)(3); *United States v. Peguero*, 34 F.4th 143, 154 (2d Cir. 2022).

Revocation hearings remain subject, however, to the Federal Rules of Criminal Procedure, which "provide[] that a defendant is entitled 'an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear[.]'" *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006) (quoting Fed. R. Crim. P. 32.1(b)(2)(C)). "Therefore, when the government requests admission at a [revocation] hearing of a hearsay statement that does not fall within one of the established hearsay exceptions, Rule 32.1(b)(2)(C) and the Due Process Clause 'require[ ] the court to determine whether good

3

cause exists to deny the defendant the opportunity to confront the adverse witness.'" *United States v. Maldonado*, 23-6954-CR, 2024 WL 2525612, at *1 (2d Cir. May 24, 2024) (quoting *Williams*, 443 F.3d at 45). "In making that determination, the court must balance, on the one hand, the defendant's interest in confronting the declarant, against, on the other hand, the government's reasons for not producing the witness and the reliability of the proffered hearsay." *Williams*, 443 F.3d at 46.

## ANALYSIS

### I. Evidence Relating to Defendant's New Criminal Conduct

The Government seeks to admit evidence related to the alleged rape committed by Defendant. Gov't Mot. *in Limine* at 2–6.

(A) <u>The 911 Call</u>

The Government moves to admit the transcript and audio recording of a 911 call made by the Victim's daughter's boyfriend (the "Caller"), who was reporting the rape. *Id.* at 8; Ex. 1 to *id.*

Pursuant to Federal Rule of Evidence 801, any out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a clearly delineated hearsay exclusion or exception. Fed. R. Evid. 801; *see also* Fed. R. Evid. 802. Excited utterances constitute one such exception. Fed. R. Evid. 803(2). Excited utterances "relat[e] to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* For a statement to qualify as an excited utterance, a court must find that (1) a startling event occurred; (2) the declarant made the statement while under the stress of the excitement caused by the startling event; and (3) the statement relates to the startling event. *Id.*; *United States v. Brown*, 254 F.3d 454, 458 (2d Cir. 2001). An excited utterance need not be contemporaneous with the

4

startling event to be admissible. *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998). Furthermore, under the Federal Rules of Evidence, hearsay within hearsay is not excluded if each linked statement falls into an exception to the hearsay rule. Fed. R. Evid. 805.

Courts routinely consider statements made to a 911 operator to be excited utterances. *See, e.g., United States v. Spencer*, 22-CR-1464, 2023 WL 5091827, at *3 (2d Cir. Aug. 9, 2023); *United States v. Bracy*, 20-CR-483, 2022 WL 17801133, at *4 (E.D.N.Y. Dec. 19, 2022) (Ross, J.). So too here, where a startling event—a sexual assault, and each individual's learning of such—had taken place, and the Caller called 911 upon learning of it from the Victim's daughter. Ex. 1 to Gov't Mot. *in Limine*. At one point during the 911 call, after the 911 operator asks the Caller follow-up questions, the Caller says, "[My girlfriend's] mom was just raped, I'm freaking out"—in a noticeably agitated and concerned tone. *Id.* The Caller was perturbed; he was "under . . . stress . . . caused by the startling event." *Id.* Although the Caller makes his statements approximately five hours after the alleged rape, his tone indicates his belief the event just occurred and evidences his subjective stress. Finally, the Caller's statements relate to the startling event—he was calling so the 911 center could dispatch police to aid the Victim. *Id.*

However, "excited utterances 'must rest on personal knowledge' because '[m]ere excitement . . . not coupled with knowledge of the event described, adds nothing to reliability.'" *United States v. Wilson*, 642 F. Supp. 380, 389 (W.D.N.Y. 2022) (Wolford, J.) (quoting *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004)). "An assertion of fact based on conjecture and surmise, to which the declarant would not be allowed to testify if called to the witness box, does not become admissible under an exception to the hearsay rule merely because it was uttered out of court in a state of excitement." *Brown v. Keane*, 355 F.3d 82, 90 (2d Cir. 2004) (finding a 911 tape inadmissible under the excited utterance exception where the Caller heard gunshots but did

not see who was firing the shots). Here, the startling event is the Caller's learning of the rape. He did not witness the rape, nor does he have personal knowledge about the event. The Caller learned about the sexual assault through the Victim's daughter, who in turn learned about it through the Victim's sister, who had learned about it through the Victim. Exs. 1 and 2 to Gov't Mot. *in Limine*. The multiple links of hearsay through which the Caller learned of the assault could diminish the reliability of the Caller's statements.

The Government argues "[o]n these unique facts, however, these multiple levels of hearsay actually corroborate the Victim's account. . . . The Victim's limited disclosure underscores her reliability." Gov't Reply at 4–5. The Court agrees. The Government meets the good cause showing required by Fed. R. Crim. P. 32.1(b)(2)(C), and the Court grants the Government's motion to admit the entirety of the 911 call.

(B)   <u>The Victim's Statements to a Police Officer, as Captured on the Officer's Body-Worn Camera</u>

The Government seeks to admit the Victim's statements to Officer Edwin Gerena, as recorded on Officer Gerena's body-worn camera. Gov't Mot. *in Limine* at 8–9; Ex. 2 to *id.*

The hearsay rule and excited utterances exception to the hearsay rule apply here as well. Defense counsel argues the Victim's statements to Officer Gerena "are not sufficiently contemporaneous to represent an excited utterance." Def. Opp. to Gov't Mot. *in Limine* at 4. Defense counsel argues the "temporal gap is relevant to determination," as the Victim made her statements approximately six hours after the allegations. *Id.* Defense counsel also describes the Victim as evincing "no signs of a sustained level of spontaneity that would justify this hearsay exception." *Id.* Indeed, unlike the 911 Caller's tone and language, the Victim's statements to Officer Gerena do not necessarily indicate she was still under the stress of the startling event.

6

She appears relatively calm at times and repeatedly tells Officer Gerena she wants to go about her day. Ex. 2 to Gov't Mot. *in Limine*.

However, considering the relaxed evidentiary strictures governing revocation hearings, *see* Fed. R. Evid. 1101(d)(3), and the discretion allowed the district court in such hearings under the good cause analysis, *see generally* Fed. R. Crim. P. 32.1(b), the Court grants the Government's motion to admit the video from Officer Gerena's body-worn camera, noting also Defendant "has no objection . . . to the 'visual depictions' from the body camera footage being admitted into evidence." Def. Opp. to Gov't Mot. *in Limine* at 4.

(C)   <u>The Victim's Statement to a U.S. Probation Officer</u>

The Government seeks to admit the Victim's statements to Probation Officer Matt Geller, as recorded in Probation Officer Geller's internal records. Gov't Mot. *in Limine* at 10; Ex. 3 to *id.*

A court may admit statements that otherwise constitute hearsay if those statements qualify as business records. Fed. R. Evid. 803(6). The party presenting the records must show that (1) the records were made at or near the time by—or from information transmitted by— someone with knowledge; (2) the records were kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (3) making the record was a regular practice of that activity; (4) these conditions are shown by the testimony of the custodian or another qualified witness, or by certification; and (5) the opponent does not show that the source of information or the method or circumstances of preparation of the records indicates a lack of trustworthiness. *Id.* Again, hearsay statements contained within other hearsay statements must independently satisfy an exception to the hearsay rule to be admitted; a party cannot circumvent the hearsay rule by couching another's words in their own. Fed. R. Evid.

7

805. Accordingly, when business records contain *statements of witnesses or complaints within*, such statements are hearsay unless they fit into an independent exception to the hearsay rule. *Al-Mohammedi v. City of Buffalo*, 13-CV-1020, 2016 WL 1748264, at *3 (W.D.N.Y. Mar. 29, 2016) (Roemer, Mag.).

Here, the records kept by Probation Officer Geller of his conversations with the Victim are admissible as business records under Fed. R. Evid. 803(6). Each entry was created at or near the time of the conversations, as evident from the chronological date stamps. *See generally* Ex. 3 to Gov't Mot. *in Limine*. Probation Officer Geller kept these records as part of a regular, mandatory policy of the United States Probation Department. *Id.*; Gov't Mot. *in Limine* at 10; *Wright v. United States*, 13-CV-1379, 2017 WL 3142041, at *9 (E.D.N.Y. July 24, 2017) (Bianco, J.) ("Federal probation officers are required to keep a computerized chronology documenting their supervision of an offender"). Probation Officer Geller certified these records, and defense counsel has not shown the records to be otherwise untrustworthy. Ex. 3 to Gov't Mot. *in Limine*.

But some of Probation Officer Geller's records contain the Victim's own statements. Defense counsel thus contends the records containing the Victim's statements are inadmissible hearsay, because the Victim had no "business duty" to report. Def. Opp. to Gov't Mot. *in Limine* at 4; *see also United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989) (considering how an adjuster's report could qualify as a business record except that it contained hearsay statements from someone with no duty to report information); *U.S. Underwriters Insurance Co. v. ITG Development Grp., LLC*, 294 F. Supp. 3d 18, 29–30 (E.D.N.Y. 2018) (Brodie, J.) (noting investigative insurance report was admissible under the business records exception but witness statements within the report were not).

Even considering the relaxed evidentiary strictures governing revocation hearings, *see* Fed. R. Evid. 1101(d)(3), and the discretion allowed the district court in such hearings, *see generally* Fed. R. Crim. P. 32.1(b), the Court denies the Government's motion to admit those Probation Department records authored by Probation Officer Geller insofar as they contain the Victim's hearsay statements. Probation Officer Geller, however, may testify subject to cross-examination by defense counsel.

(D)     Text Messages Between the Victim and Defendant

Finally, the Government seeks to admit text messages between the Victim and Defendant. Gov't Mot. *in Limine* at 9–10; Ex. 4 to *id.*

Federal Rule of Evidence 801(d)(2)(A) excludes from the definition of hearsay statements offered against an opposing party when that statement was made by the party in an individual or representative capacity. Fed. R. Evid. 801(d)(2)(A). Notably, this exclusion does not apply when a party seeks to introduce its own statements. *Id; see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.") (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)). When a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. Fed. R. Evid. 106. The adverse party may do so over a hearsay objection. *Id.*

Here, Defendant's text messages to the Victim must be analyzed separately from the Victim's text messages to Defendant. Defendant's text messages are admissible under the statements of party-opponent exclusion to the hearsay rule. Fed. R. Evid. 801(d)(2)(A).

The Victim's text messages, however, do not apparently fall under any exclusion or exception to the hearsay rule—nor does the Government contend so. Instead, the Government argues the Victim's text messages should be admitted because they are contained "in the same conversation" as Defendant's messages, and so the "interest of justice" merits their admissibility. Gov't Mot. *in Limine* at 9; Fed. R. Crim P. 32.1(b)(2)(C). The Government emphasizes the reliability of the Victim's messages, which were made "close in time to the assault" and which contain no "indication . . . of bias." *Id.* at 10.

Considering the relaxed evidentiary strictures governing revocation hearings, *see* Fed. R. Evid. 1101(d)(3), the discretion allowed the district court in such hearings under the good cause analysis, *see generally* Fed. R. Crim. P. 32.1(b), and the fairness considerations expressed in Fed. R. Evid. 106, the Court grants the Government's motion to admit text messages between Defendant and the Victim, including text messages sent from the Victim to Defendant.

## II. Defendant's Drug Treatment Records

The Government also seeks to admit evidence of Defendant's noncompliance with his substance abuse treatment program through records from the TRI Center treatment program. Gov't Mot. *in Limine* at 10; Exs. 5 and 6 to *id.*

The same rule for the business records exception to the hearsay rule applies to Defendant's drug treatment records. Fed. R. Evid. 803(6). The drug treatment records here fulfill the elements for the business records exception: (1) the records were kept by TRI Center during or near the time the information was transmitted; (2) the records were kept in the regular and ordinary course of TRI Center's business; (3) TRI Center made the record as a regular practice; (4) the records bear signatures of TRI Center representatives where applicable; and (5) defense counsel does not demonstrate the records are untrustworthy; indeed, defense counsel

does not argue against admissibility of these records. Exs. 5 and 6 to Gov't Mot. *in Limine*; *see generally* Def. Opp. to Gov't Mot. *in Limine*.

The Court grants the Government's motion to admit Defendant's drug treatment program records.

### III.  Preclusion of Cross-Examination of Witnesses' Disciplinary Violations

(A)     Officer Edwin Gerena's Violation

The Government seeks to preclude Defendant from cross-examining Officer Gerena about a July 16, 2023, violation of his department's policy. Gov't Second Mot. *in Limine* at 10.

Per Fed. R. Evid. 608(b), district courts have discretion to permit or deny a line of inquiry on cross-examination. *United States v. Barret*, 10-CR-809, 2012 WL 194992, at *2 (E.D.N.Y. Jan. 23, 2012) (Matsumoto, J.). Courts often preclude cross-examination on unrelated disciplinary charges where the relevant conduct did not involve the witness's credibility. *See id.* (precluding questioning on an officer's prior substantiated CCRB complaints where they did not involve conduct bearing on credibility). There is no jury in this case. This Court spent twenty-three years as a Commissioner on the New York City Civilian Complaint Review Board (CCRB) and understands police disciplinary records for what they signify and what they do not signify. Defendant may cross-examine the officers on disciplinary matters.

The Court denies the Government's motion to preclude Defendant from cross-examining Officer Gerena about the July 16, 2023, department policy violation.

(B)     Probation Officer Matt Geller's Violations

The Government also seeks to preclude Defendant from cross-examining Probation Officer Geller about two June 2024 violations of his office's policies. Gov't Second Mot. *in Limine* at 10.

11

Per the above, the Court denies the Government's motion to preclude Defendant from cross-examining Probation Officer Geller about the two June 2024 violations of his office's policies.

(C)  The Victim's Arrest

The Government also seeks to preclude Defendant from cross-examining any witness who proffers the Victim's out-of-court statements regarding a November 28, 2023, arrest. Gov't Second Mot. *in Limine* at 10.

Per the above, the Court denies the Government's motion to preclude Defendant from cross-examining any witness who proffers the Victim's out-of-court statements on the arrest.

## CONCLUSION

For the reasons set forth below, the Government's motions *in limine* at ECF No. 27 are **GRANTED in part** and **DENIED in part**, and the Government's motions *in limine* at ECF No. 29 are **DENIED**.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 25, 2025
       Brooklyn, New York