```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
               v.                        :       DECISION & ORDER
                                         :       24-CR-192 (WFK)
REINALDO DAVIS,                          :
                                         :
                    Defendant.           :
------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 28, 2023, the United States District Court for the District of Vermont sentenced Defendant to eighteen months' imprisonment and three years' supervised release for one count of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a), (b)(1)(C). Judgment, 2:22-CR-92, ECF No. 29 (D. Vt.). On November 27, 2024, while Defendant was under supervision in the Eastern District of New York, the United States Probation Office filed a violation of supervised release ("VOSR") report, charging Defendant with violating his conditions of supervision by: (1) engaging in new criminal conduct; (2) leaving the federal judicial district without permission; (3) unlawfully using controlled substances; and (4) failing to comply with substance abuse treatment. VOSR Report, ECF No. 7. The Court finds the Government meets its burden as to all four VOSR charges. Accordingly, the Court revokes Defendant's term of supervised release.

## BACKGROUND

On August 18, 2022, a grand jury in the District of Vermont returned a one-count Indictment charging Reinaldo Davis ("Defendant") with distribution of cocaine base in violation of 21 U.S.C. §§ 841(a), (b)(1)(C). Indictment, 2:22-CR-92, ECF No. 7 (D. Vt.). On December 8, 2022, Defendant pled guilty to the Indictment's sole count pursuant to a plea agreement. Minute Entry for Change of Plea Hearing, 2:22-CR-92, ECF No. 19 (D. Vt.). On April 28, 2023, the United States District Court for the District of Vermont sentenced Defendant to eighteen months' imprisonment followed by three years' supervised release. Judgment, 2:22-CR-92 ("Judgment"), ECF No. 29 (D. Vt.). On October 4, 2023, Defendant completed his custodial term and commenced supervised release. Violation of Supervised Release ("VOSR") Report at 1, ECF No. 7. Among other things, Defendant's conditions of supervision (1) forbade him from

committing new crimes, (2) required him to obtain permission before leaving the district of supervision, (3) forbade illegal drug use, and (4) mandated he undergo substance abuse treatment. Judgment at 3–5.

On May 13, 2024, Defendant's supervision was transferred to the Eastern District of New York, where he resides. Transfer of Jurisdiction Request, ECF No. 1; Transfer of Jurisdiction Acceptance, ECF No. 2. On November 27, 2024, the United States Probation Department filed a VOSR Report, charging Defendant with: (1) committing another crime (rape of a former partner, the "Victim"); (2) leaving the federal judicial district of supervision without permission; (3) unlawfully using controlled substances; and (4) failing to comply with substance abuse treatment. VOSR Report at 6–9. On April 25, 2025, the Court held a revocation hearing in connection with Defendant's alleged violations of supervised release. *See* Minute Entry for Revocation Hearing dated April 25, 2025. The Court granted in part and denied in part the Government's motions *in limine* seeking to admit certain exhibits at the hearing and seeking to preclude cross-examination on certain issues. *See* Gov't's First Motion *in Limine*, ECF No. 27; Gov't's Second Motion *in Limine*, ECF No. 31; Decision and Order, ECF No. 32.

## **LEGAL STANDARD**

"Because a revocation hearing is 'not deemed part of a criminal prosecution, . . . defendants in such proceedings are not entitled to 'the full panoply of rights' that criminal defendants generally enjoy.'" *United States v. Carthen*, 681 F.3d 94, 99 (2d Cir. 2012) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). Accordingly, the Government need only prove violations of supervised release by a preponderance of the evidence—not beyond a reasonable doubt. *See United States v. Peguero*, 34 F.4th 143, 157 (2d Cir. 2022). "[T]he [G]overnment is

not put to the burden of an adversarial criminal trial" because the defendant "already stands convicted of a crime." *Id.* (internal quotation marks and citation omitted).

Based on the evidence presented at the revocation hearing, including the Court's assessment of the witnesses' credibility, the Court concludes the Government has met its burden of proof as to each VOSR charge.

## DISCUSSION

### I.   Charge One: New Criminal Conduct of Rape

Charge One of the VOSR Report charges Defendant with violating the following condition of his supervision: *You must not commit another federal, state, or local crime.* VOSR Report at 6. The Government alleges Defendant violated this condition by committing the act of rape or sexual misconduct in violation of New York law. *Id.*

Under New York law, a person is guilty of rape in the first degree when he or she engages in vaginal, oral, or anal sexual contact with another person "by forcible compulsion." New York Penal Law § 130.35. Rape in the first degree is a class B felony punishable by up to twenty-five years' imprisonment. *Id.* Relatedly, a person is guilty of sexual misconduct when he or she engages in vaginal, oral, or anal sexual contact with another person "without such person's consent." New York Penal Law § 130.20. Sexual misconduct is a class A misdemeanor punishable by up to one year of imprisonment. *Id.*

The Government presented sufficient evidence at the revocation hearing to prove by a preponderance of the evidence Defendant raped or committed sexual misconduct against the Victim. On August 29, 2024, the police department in Troy, New York, received a 911 call from the Victim's daughter's boyfriend reporting the rape. Transcript of VOSR Hearing on April 25, 2025 ("Tr.") at 23. Officer Edwin Gerena of the City of Troy Police Department responded to

3

the call. *Id.* Thereafter, the Victim informed Officer Gerena that Defendant, the father of two of her children, had come to her house that morning and "forcefully had sex with her."[1] Tr. at 24. Footage from Officer Gerena's body-worn camera shows the Victim saying: "Basically, he [Defendant] forcibly had sex with me." *Id.* at 26–27; *see also* Gov't Ex. 102. On August 30, 2024, the Victim texted Defendant he "violated [her] yesterday." Gov't Ex. 106.

Defense counsel argued the Victim's "use of the word 'forcibly' is a legal conclusion." Tr. at 101. Defense counsel contended the Victim's statements to Officer Gerena contained no details "about the incident at all and say[] only that Mr. Davis 'forcibly had sex with her.'" *Id.* He also reasoned the text messages exchanged between Defendant and the Victim "show those nuances and potential miscommunications in any relationship where, for example, one partner might want to be more intimate than the other one and [sic] feels that what happened was a violation." *Id.* at 104. He supports such reasoning with Defendant's response to the Victim's August 30, 2025, text message—Defendant wrote, "I violated? How, [Victim's name]?? …. if u feel that I did, I absolutely had no intentions on doin that." *Id.*; *see also* Gov't Ex. 106.

Defense counsel's arguments are belied by the evidentiary record. First, the Victim did not use the word "forcibly" as a legal conclusion but as a factual description of the sexual intercourse that took place on August 29, 2024. Tr. at 26–27; *see also* Gov't Ex. 102. The Victim's word choice is corroborated by the testimony of Defendant's assigned Probation Officer, Matt Geller, who testified to a conversation with the Victim about Defendant's actions. The Victim informed Officer Geller "she protested and said 'no' [to Defendant] more than 20

---

[1] The transcript reads "forcefully"; the parties use the terms "forcefully" and "forcibly" somewhat interchangeably. *See* Tr. at 30 (defense counsel asks the same witness, "Now, the complainant in the body camera footage says that the suspect *forcibly* had sex with her; is that right?", to which Officer Gerena responds, "Yes.") (emphasis added).

times. . . . [but Defendant] physically overpowered her, removed her clothing, and had forced vaginal intercourse with [her]." Tr. at 52. Second, the Victim's statements to Officer Gerena did contain details about the incident. Importantly, the Victim informed Officer Gerena that Defendant had a habit of showing up to her home unannounced, despite their being separated and having no sexual relationship. *Id.* Third, the Victim's text messages to Defendant—particularly her statement he "violated"—her—corroborates the Government's charge Defendant raped, or at least engaged in sexual misconduct with, the Victim.

Accordingly, the Government presented sufficient evidence to meet its burden of proof with respect to Charge One of the VOSR Report.

**II.    Charge Two: Leaving Federal Judicial District Without Permission**

Count Two of the VOSR Report charges Defendant with violating the following condition of his supervision: *You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the Court or the Probation Officer.* VOSR Report at 6. The Government alleges Defendant violated this condition by traveling to the Victim's home outside the federal judicial district of supervision without permission. *Id.*

The Government presented sufficient evidence at the revocation hearing to prove by a preponderance of the evidence Defendant left the federal judicial district of supervision, the Eastern District of New York, without permission. Defendant was required to obtain the permission of Probation Officer Matt Geller before leaving the Eastern District of New York. Judgment at 4; Tr. at 48. On August 29, 2024, Defendant was in Troy, New York, which is located outside the Eastern District. Tr. at 50. Probation Officer Geller testified neither he nor

5

anyone else at the Probation Department gave Defendant permission to leave the Eastern District of New York that day. *Id.*

Accordingly, the Government presented sufficient evidence to meet its burden of proof with respect to Charge Two of the VOSR Report.

### III.  Charge Three: Unlawful Use of Controlled Substances

Charge Three of the VOSR Report charges Defendant with violating the following condition of his supervision: *You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within fifteen days of release from imprisonment and at least two periodic drug tests, thereafter, as determined by the Court.* VOSR Report at 9. The Government alleges Defendant unlawfully used controlled substances during the period from March 28, 2024, through September 13, 2024. *Id.*

The Government presented sufficient evidence at the revocation hearing to prove by a preponderance of the evidence Defendant used marijuana and cocaine during this period. Tr. at 66–68. On each of March 28, May 24, July 12, and September 13, 2024, Defendant's urine samples tested positive for marijuana. *Id.* at 67–68. On May 24, 2024, Defendant's urine sample also tested positive for cocaine. *Id.* at 67. Probation Officer Geller testified he personally confronted Defendant about each of these positive tests. *Id.* at 67–68. According to Probation Officer Geller, Defendant admitted to using marijuana but blamed the positive cocaine result on the "possibility that there was cocaine laced . . . in the marijuana that he consumed." *Id.* at 67.

The Government therefore demonstrated by a preponderance of the evidence Defendant unlawfully used controlled substances while on supervision, meeting its burden of proof with respect to Charge Three of the VOSR Report.

### IV.    Charge Four:  Failure to Comply with Substance Abuse Treatment

Charge Four of the VOSR Report charges Defendant with violating the following condition of his supervision: *You must participate in substance abuse treatment, which may include a substance abuse assessment with a licensed substance abuse provider and abide by any programmatic treatment recommendations. This program may include testing to determine whether you have reverted to the use of drugs or alcohol. You shall contribute to the cost of services rendered based on your ability to pay or the availability of third-party payment. You must refrain from the use of alcohol and other intoxicants during and after treatment.* VOSR Report at 9.  The Government alleges Defendant failed to attend substance abuse treatment as required by this condition of supervision. *Id.*

The Government presented sufficient evidence at the revocation hearing to prove by a preponderance of the evidence Defendant failed to comply with substance abuse treatment. During his term of supervised release, Defendant was assigned to undergo substance abuse treatment at TRI Center, an outpatient treatment center in Brooklyn, New York. Tr. 63–64, 89. Defendant was required to attend regular treatment sessions and undergo drug testing at TRI Center once a month. *Id.* at 64.  However, Defendant frequently missed his scheduled sessions. *Id.* at 68–69.  Probation Officer Geller testified Defendant gave various excuses about his failure to attend treatment: "Initially it was difficulty procuring the funds to travel to treatment, and thereafter it was illness. Sometimes he didn't go because he didn't think it was effective for him to go." *Id.* at 69.  Defendant's habitual non-attendance ultimately caused TRI Center to provide the Probation Department a clinical recommendation "that it was clinically ineffective for him [Defendant] to continue." *Id.* at 70.  Upon TRI Center's recommendation, the Probation Department terminated its contract with TRI Center for Defendant's treatment in November

7

2024. *Id.* A representative from TRI Center, Ms. Lucero, testified to the accuracy of TRI Center records.[2] *Id.* at 81–95.

The Government therefore demonstrated by a preponderance of the evidence Defendant failed to comply with mandatory substance abuse treatment, meeting its burden of proof with respect to Charge Four.

## CONCLUSION

For the reasons set forth above, the Court finds Defendant committed each charge of the VOSR Report and revokes Defendant's term of supervised release.

SO ORDERED

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 16, 2025
      Brooklyn, New York

---

[2] The Government presented four types of records from TRI Center at the revocation hearing: (1) admissions assessments; (2) monthly treatment reports to the United States Probation Office; (3) attendance logs; and (4) urinalysis logs. Tr. at 83–90; Gov't Exs. 104, 107.